**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
|    Althea M. Machtemes ) | Case No. 10-B-49985 |
| ) | Chapter 11 |
| ) | |
| ) | Plan filed on 03/07/2011 |
| ) | |
|    Debtor ) | Judge Pamela S. Hollis |

**OBJECTION TO CONFIRMATION OF PLAN**
**AND DISCLOSURE STATEMENT FILED ON MARCH 7, 2011**

     **NOW COMES** the FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for INDEPENDENT BANKERS' BANK ("FDIC-R"), by and through its undersigned counsel, and moves this Honorable Court for an Order denying confirmation of Debtor's Chapter 11 Plan and rejecting Debtor's Disclosure Statement filed on March 7, 2011, and in support thereof FDIC-R states as follows:

     **I.**    **Background Information:**

1.    Debtor filed a petition under Chapter 11 of Title 11, United States Bankruptcy Code on November 8, 2010 and this Court has jurisdiction pursuant to 28 U.S.C. §1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

2.    On Wednesday, January 13, 2010, the Federal Deposit Insurance Corporation ("FDIC") completed the sale of Independent Bankers' Bank Bridge Bank, National Association ("IBB Bridge Bank, N.A.") to The Independent BankersBank ("TIB"), Irving, TX.

3.    Previously, on Friday, December 18, 2009, Independent Bankers' Bank (occasionally referred to as "IBB"), Springfield, IL was closed by the Illinois Department of Financial and

1

Professional Regulation - Division of Banking and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver ("FDIC-R").[1]

4. As a result of the instant appointment, the FDIC-R has succeeded to "all rights, titles, powers, and privileges" of IBB, may "take over the assets of and operate" IBB with all the powers thereof, and may resolve outstanding claims against IBB Bank. *See* 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i), 1821(d)(3).

5. In the instant matter, the Debtor was the underlying borrower for participation loans with First Community Bank and Trust (in which IBB was the participating lender) that were left for the FDIC-R: (a) 12 unit property located at 402-410 Huron; 227-237 Somonauk and 217 Blackhawk in Park Forest, Illinois (the "12 Unit Property"); and (b) trailer park located at 20403 and 20409 Wicker, Lowell, Indiana (the "Lowell Property"). The Debtor's schedules listed the fair market values of the properties at $440,000.00 and $195,000.00 respectively.

6. The note on the Lowell Property *matured* on February 15, 2011. The 12 Unit Property has a final balloon payment of $552,326.49 scheduled for July 26, 2011. The Debtor proposes a Chapter 11 Plan that forces the FDIC-R to take on unreasonable risk in extending a previously defaulted loan by financing the matured loan over 30 years, while earning only 4% interest.

7. As of March 26, 2011, the Debtor was past due in the amount of $70,108.50 on the 12 Unit Property. As of March 15, 2011, the Debtor was past due in the amount of $249,153.03 (which included the final payment at maturity on 2/15/2011) on the Lowell Property. No provision has been made in the Debtor's Chapter 11 Plan to cure post-petition arrearages.

8. Debtor and FDIC-R are currently negotiating a possible sale of the 12 Unit Property based upon an offer that exceeds the claimed value on the Debtor's schedules ($500,000 versus

---

[1] The FDIC's announcement regarding the failure of Independent Bankers' Bank is publicly accessible at http://www.fdic.gov/bank/individual/failed/ibb.html.

$440,000) and a loan modification for the Lowell Property.  Neither of these negotiations were provided for under the terms of the current Chapter 11 Plan or Disclosure Statement, to the detriment of the FDIC-R and other general unsecured creditors.

## II. Objections

9. Section 1129(a) of the Bankruptcy Code lists sixteen conditions precedent for confirmation of a plan under Chapter 11. Except for Section 1129(a)(8), each of these sixteen conditions is mandatory. As the plan proponent, the Debtor bears the burden of demonstrating compliance with each of these conditions. *See e.g.*, *In re Danny Thomas Properties II Ltd. Partnership*, 241 F. 3d 959, 963 (8th Cir. 2001); *In re Future Energy Corp.*, 83 B.R. 470, 481 (Bankr. S.D. Ohio 1988).

10. The Bankruptcy Court has an independent duty to determine a plan's compliance with Section 1129 of the Bankruptcy Code whether or not creditors have raised objections. *See e.g.*, *Future Energy*, 83 B.R. at 481. Moreover, a plan must be confirmed or rejected in its entirety. House Report No. 95-595, 95th Cong., 1st Sess. 413-418 (1977) (The [bankruptcy] court is not permitted to alter the terms of the plan. It must merely decide whether the plan complies with the requirements of Section 1129(b)…).  *See also*, *In re Haukos Farms, Inc.*, 68 B.R. 428, 437 (Bankr. D. Minn. 1986) (a plan must be confirmed or rejected in its entirety).

11. As discussed in detail below, the Debtor's Chapter 11 Plan falls short of satisfying the requirements set forth in Section 1129(a) and (b) of the Bankruptcy Code, and may not be confirmed. In sum, the Plan does not comply with the Bankruptcy Code, has not been proposed in good faith, is not in the best interests of creditors, is not feasible, is not fair and equitable, and cannot be confirmed as a matter of law.

A. **DEBTOR'S CHAPTER 11 PLAN FAILS TO SATISFY THE CONFIRMATION STANDARDS OF SECTION 1129(a)**

1. **Section 1129(a)(7)(A) - The Debtor's Plan Fails to Provide FDIC-R True Liquidated Fair Market Value for its Claims**

12. As noted above, Debtor has tendered a proposed purchase contract for the 12 Unit Property in the amount of $500,000.00. *See* Exhibit 1. This amount exceeds the Debtor's scheduled value of $440,000. The Chapter 11 Plan further provides that the "value of the property securing the claims in this class shall be exactly equal to the lesser of the fair market value of the property securing said Allowed Claim or the value of the Allowed Claim secured thereby." *Id.* at §5.04 Class 4: 4(a).

13. The "fair market value" of an asset is "the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *In re Limonciello*, 2009 WL 1408077, *8 (Bankr.N.D.Ill., May 19, 2009) (citing *In re Doctors Hosp. of Hyde Park, Inc.*, 360 B.R. 787, 840 (Bankr.N.D.Ill.2007) quoting, *Black's Law Dictionary* 1587 (8th ed.2004)). Since the Debtor's Plan proposes to pay $60,000 less than a fair value offer for the 12 Unit Property, the Debtor proposes to pay a secured creditor less than the fair market value of its collateral in violation of Section 1129(a)(7)(A).[2] Thus, the Court must deny confirmation of Debtor's Chapter 11 Plan.

14. Regarding the Lowell Property, the Debtor's Exhibit B to the Disclosure Statement (Projected Budget) provides a summary of income and expenses as follows (totals added):[3]

| 20403 Wicker Lowell, In | 2011 | 2012 | 2013 |
|---|---|---|---|
| Rent | 67500 | 69503 | 71610 |
| Taxes | 3950 | 4200 | 4400 |
| Insurance | 2900 | 2900 | 3150 |
| Repairs/lawn- | 4000 | 4200 | 4400 |
| Utilities | 7200 | 7400 | 7600 |
| Misc 10% | 6750 | 5953 | 7161 |
| Net Income: | $42,700 | $44,850 | $44,899 |

---

[2] Debtor's counsel has informed FDIC-R that tenants have refused to pay rent in said property, so it seems improbable that the value of the 12 Unit Property would have somehow *increased* since the petition date. Accordingly, $500,000 should have been the value of the property as of the petition date.

[3] FDIC-R does not admit or deny the accuracy of these numbers. Since filing, Debtor's counsel has informed the FDIC-R's counsel of problems with tenants not paying rents. Nevertheless, the above numbers are addressed for sake of argument.

15.     Yet, the Debtor attributes a negative value to the Lowell Property compared to the FDIC-R's secured claim amount; listing the value at $195,000 instead of the $244,000 scheduled claim amount. Viewing the property from an income-value perspective (according to the Debtor's own numbers), the Lowell Property could easily pay the FDIC-R's full secured claim *plus* contract interest, fees and costs. Accordingly, as with the 12 Unit Property discussed above, the Debtor has undervalued the Lowell Property and, again, offers to pay the FDIC-R less than the full value owed in violation of Section 1129(a)(7)(A).

### 2. Section 1129(a)(11) -- The Debtor's Plan Is Not Feasible

16.     Section 1129 (a) (11) of the Bankruptcy Code provides, in part, that a plan cannot be confirmed unless confirmation "is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor." Courts interpreting Section 1129(a)(11) of the Bankruptcy Code focus on the feasibility of the plan, giving due consideration to the adequacy of the capital structure, the earning power of the business, economic conditions and other factors firmly rooted in objective fact. *Danny Thomas*, 241 F.3d at 962-964; *In re U.S. Truck Co.*, 800 F.2d 581, 589 (6th Cir. 1986); *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985). Where the plan's hope for future success is grounded upon every factor working favorably with little margin for error, the plan is not feasible because many factors are out of the control of the plan proponent and the risk of future default is shifted to the existing lender. *See e.g.*, *In re Edgewater Walk Apartments*, 162 B.R. 490, 501-504 (N.D. Ill. 1993); *In re Smitty Investment Group, LLC*, 2008 W. 2095523, *5-11 (Bankr. D. Idaho 2008); *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 394-395 (Bankr. W.D. Tenn. 1991); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506-510 (Bankr. S.D. Tex. 1989).

17.     Here, the Debtor has failed to establish that the Chapter 11 Plan is feasible because, among other things, (i) there are insufficient unencumbered funds to pay administrative and other

5

unsecured claims, (ii) there is no capital infusion, (iii) there is little margin for error, and (iv) no proof that the balloon payment on the 12 Unit Property or Lowell Property will be satisfied. Consequently, the risk of future default is shifted to the FDIC-R, and the Chapter 11 Plan may not be confirmed.

**B.    DEBTOR'S CHAPTER 11 PLAN FAILS TO SATISFY SECTION 1129(b)**

18.    If this Court overrules the foregoing objections, the Debtor will be required to obtain confirmation of the Chapter 11 Plan by attempting to cramdown FDIC-R's secured claim in accordance with Section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code permits confirmation of a plan over the objection of an impaired class so long as the plan does not discriminate unfairly and is fair and equitable. The fair and equitable concept requires more than just a mechanical application of Section 1129(b)(2)(A). Rather, it requires consideration of the entire plan in the context of the rights of creditors under state law and the particular facts of each case. *In re D&F Constr., Inc.*, 865 F.2d 673, 675-676 (5th Cir. 1989). The fair and equitable concept does not contemplate the restructuring of debt over a secured creditor's objection without providing the secured creditor with rights substantially similar to those provided in the prepetition loan documents. *See e.g.*, *In re Kennedy*, 158 B.R. 589, 599-601 (Bankr. D. N.J. 1993); *EFH Grove Tower Assoc.*, 105 B.R. 310, 313-315 (Bankr. E.D. N.C. 1989); *In re Hoffman*, 52 B.R. 212, 217 (Bankr. D. N.D. 1985); *In re Nolan Tool Co.*, 50 B.R. 488, 490 (Bankr. W.D. Ark. 1985). If a plan seeks to alter the collateral securing a secured creditor's loan, the substitute collateral must not increase the secured creditor's risk exposure. *See e.g.*, *Arnold & Baker Farms*, 85 F.3d 1415, 1422 (9th Cir. 1996); *Monarch Beach*, 166 B.R. at 436.

19.     Moreover, the Debtor has an affirmative duty to attempt to maximize the return to creditors in a good-faith manner.  Here, the Debtor fails to even reference the potential sale of the 12 Unit Property in the Plan or Disclosure Statement.  In addition to eliminating one of the FDIC-R's secured claims, the sale would also likely satisfy a number of priority claims (priority Tax Claims under Section 3.02 of the Debtor's Plan) presumably leaving additional funds for the Debtor's remaining under-secured and unsecured creditor claimants.

20.     Consequently, the Chapter 11 Plan is not fair and equitable and unfairly discriminates in violation of Section 1129(b)(2)(A) for numerous reasons, including, but not limited to, the following:

(i) The Plan fails to provide for an adequate rate of interest for the FDIC-R's loan;

(ii) The Plan fails to adequately compensate the FDIC-R for the additional unreasonable risk imposed upon the FDIC-R by forcing the FDIC-R to accept a 30-year loan for properties that have fully matured (or nearly fully matured) loans;

(iii) The Plan fails to provide FDIC-R with an amount equal to the *present value* of the FDIC-R's collateral;

(iv) The Plan violates FDIC-R's right to retain its lien on cash proceeds of its collateral;

(v) The Plan improperly eliminates many of FDIC-R's existing and valuable bargained-for rights under the existing IBB loan documents;

(vi) The Plan does not provide FDIC-R with the indubitable equivalent of its secured claim;

(vii) The Plan fails to provide any redress for the Debtor's post-petition defaults.

## **CONCLUSION**

For the foregoing reasons, the FDIC-R requests that the Court deny confirmation of the Debtor's Chapter 11 Plan, reject the Debtor's Disclosure Statement, and for such other relief as the Court deems just and proper.

> Respectfully Submitted,
>
> FEDERAL DEPOSIT INSURANCE CORPORATION,
> AS RECEIVER FOR IBB
>
>
> By: /s/ Jason R. Ballard
>         One of its Attorneys

Jason R. Ballard (ARDC #6301410)
FEDERAL DEPOSIT INSURANCE CORPORATION
Legal Division, Litigation & Resolutions
200 N. Martingale Rd., Suite 200
Schaumburg, IL 60173
Telephone: 847.273.9257
Facsimile: 847.273.9257
E-mail: jballard@fdic.gov